## GRAY & ux. versus HUTCHINS.

Before the enactment of R. S., a disseizin of the owner of land could only be effected, by one holding it *adversely* to his title.

The owner of lands in possession of another, before the R. S., when such possession was not *adverse*, might make an effectual conveyance of the land.

If one enters and occupies land, under a bond from the owner to convey upon certain payments being made, he cannot set up such possession as adverse.

Where the tenant claims title to land by *adverse possession*, evidence how the land was run out and monuments established, when he entered upon it under a contract with the owners, is immaterial, and may rightfully be excluded.

The grantor cannot by his testimony limit the effect of his deed.

EXCEPTIONS. TENNEY, J. presiding.

WRIT OF ENTRY, for a part of lot No. 15, in Madison, tried on the issue of *Nul disseizin*.

The date of plaintiff's writ is Nov. 7, 1850.

The demandant claimed title, by intermediate deeds of a similar tenor, through one from John G. Neil to Laban Lincoln, dated and recorded in November, 1813, which described the following tract, "sixty acres of land lying in Madison in the county of Somerset, on the north end of lot No. 15, being all the residue and remainder of said lot after one hundred acres are measured off from the south end of said lot, be the same more or less."

The tenant introduced a deed from John G. Neil to James Neil, dated and recorded in the early part of 1814, describing the following tract "situate in said Madison, being one hundred acres on the south end of lot No. 15, and all the land in said lot except so much as I *deed* to Laban Lincoln, it being part of the land deeded to me by Moses Barnard." Also a deed from said James to Washington Rowell in 1842, covering a part of the disputed territory, and a deed from said Rowell to tenant, made in 1848, of the same parcel.

The diagram will more clearly show the tract in dispute.

Gray *v.* Hutchins.

The 100 acres by measure, described in the deed to James Neil, extends northerly to the line A. B., but the tenant claimed that it extended to a fence C. E, at the north-west corner of his land, there being a stake at C. as originally run.

The tenant also introduced testimony tending to show that he had had the premises in possession for such a length of time as to have acquired an absolute title, and proved by one Jediah Hayden, that James Neil forty years since cut down trees on the south part of lot 15, as far north as the fence now stands, dividing said lot, and that Neil and those claiming under him have occupied up to the same bounds ever since his acquaintance with it. He also proved by John McLaughlin a similar occupation.

He also read the deposition of John G. Neil, subject to objection, to the effect, that this lot belonged to one Moses Barnard, who requested him to run off and survey to James Neil 100 acres from the south part of lot 15, and that he did so on April 20, 1807, with the assistance of Timothy Brown and Reuben Kincaid as chairmen, and that Barnard gave James Neil a bond for a deed. The witness bought all of Barnard's rights in Madison, and in 1814, conveyed to said James the same parcel of land of No. 15, by him surveyed in 1807. The remainder of the lot he intended to convey to Lincoln.

The tenant then offered the deposition of Timothy Brown, which was objected to and excluded by the Judge. The deponent stated, that he was employed by John G. Neil in 1807, to assist in running off 100 acres from the south end of the lot to James Neil, and described the manner of running it out and the location of the monuments.

The tenant offered James Neil as a witness, but he was excluded on the ground of interest, it appearing that he had a suit pending in Court for an alleged trespass on the premises, against one of the demandants, and there was another similar suit against him.

The demandant proved by Washington Rowell, that not earlier than 1832, and not later than 1838, when one Scribner lived on the part of the lot now occupied by the demandant, James Neil stated "all he bought was 100 acres of the south end of the whole lot, and that was all he could hold, excepting that he agreed to pass deeds with Scribner, fixing the line upon *that* fence." He did not say where the true

line would be, excepting that 100 acres would not go to that fence, (the fence to which the tenant claims.)

The tenant contended, that if either of the grantors through whom demandant claims was disseized at the time of his conveyance, all being prior to the R. S., the title of demandant would fail, they pretending to no other title than a paper one, none of them having exercised any acts of ownership over the premises, all of them, for aught appearing, having acquiesced in the adverse possession of James Neil.

The Court did not so instruct the jury, but said to them *that* if they believed James Neil did not hold the land in dispute adversely to the true owner previous to the year 1832, he gained no title by his occupancy, and it was for the jury to consider whether said Neil understandingly disclaimed title in the disputed land to Washington Rowell, and whether Rowell had stated the conversation with Neil correctly; and if they believed Rowell's testimony, considered in connection with all the other evidence in the case, they would determine whether said Neil did hold the premises in dispute adversely to the true owner, and if he did not hold them adversely up to the year 1832, the previous possession of said James Neil would be qualified, so that it would not amount to a dissiezin of the true owner; but if said James Neil had held adversely to the true owner for more than twenty years before the the year 1832, or for twenty years together before the date of the writ, a title would be acquired by said Neil by disseizin, but if Neil did not so hold, but in submission to the true owner, then the rights would pass by the respective deeds in the same manner as if Neil had not been in possession; and on the other hand if Niel had held adversely to the true owner during his occupation, he having acquired thereby a title, it was immaterial whether any rights passed by the deeds referred to, under which the demandant claims.

As to the deposition of John G. Neil, the Judge remarked to the jury, that the facts therein stated could not limit the effect of his deed to Laban Lincoln, made afterwards, and on that point they would disregard it.

At the close of the charge, the Judge read to the jury, R. S. c. 147, § 11, that they might understand what was necessary to constitute a disseizin, and copied the words of the section read, and placed it in the hands of the jury on their retirement, after having explained the possession required to amount to a disseizin.

The verdict was for demandant, and the tenant excepted to the rulings, instructions, directions and acts of the Judge.

*Leavitt* and *Webster*, for tenant.

*J. S. Abbott*, for demandant.

HATHAWAY, J. — The title, by deed, to the land in dispute is clearly in the demandants. The question is whether or not the tenant and those under whom he claims, had acquired a title by possession.

The possession of James Neil according to the testimony of J. G. Neil commenced in submission to Barnard's title and so continued until January 29, 1814. The deposition of Brown, stating how the land was run out and marked in 1807, could not affect the title of the owner at that time or of those acquiring title from him, because there was clearly no disseizin prior to 1814. The testimony of Brown therefore could not affect the rights of the parties and might, for that reason, be properly excluded.

Those rights must depend upon the question whether or not James Neil held the demanded premises adversely, claiming title twenty years after he received his deed in 1814. The testimony of Rowell had a tendency to satisfy a jury that Neil, in 1832 or 1833, did not claim to own more than one hundred acres, although he had more in possession. The deposition of Spencer, said to have the same tendency, from the description of it, seems to have been properly admitted. (No copy of it was furnished the Court.)

The rulings of the Judge, who presided at the trial, appear to have been correct and the exceptions are overruled.

SHEPLEY, C. J., and HOWARD and RICE, J., concurred.